## CHRISTOPHE COLOMB et al. *v.* GEORGE W. JONES et al.

F., the tutor of a minor, purchased, at a judicial sale, a slave belonging to the minor, and the widow in community. The widow approved of the purchase. Afterwards F. was removed from the tutorship, his account homologated—and R., being appointed in his stead, was authorized by the Court to receive the price of the sale. *Held:*—This judgment was, by implication, a judicial approval of the sale, and the Probate Court was competent to sanction it. It may well have been considered by the Probate Judge advantageous for the minors that their new tutor should take the value of the slave in money, rather than bring a suit against F. to rescind the sale.

It seems, from the phraseology of Article 2139 of the Civil Code, that a minor injured by a violation of its provisions, or his tutor under judicial sanction, may waive the penalty which it establishes, and claim indemnity for the loss.

APPEAL from the District Court, Fifth District, Parish of Assumption, *Randall*, J. *C. A. Johnson*, for plaintiffs. *Raby*, for defendants and appellants.

ROST, J. (SLIDELL, J., dissenting.) This is an hypothecary action.

In 1849 the plaintiffs instituted an action against *Raphael Molere*, alleging that he had been their tutor, and claiming from him the proceeds of the successions of their father and mother. *Molere* admitted the tutorship and his indebtedness, and judgment was rendered against him for the amount claimed and interest, with mortgage on all his property, to take effect from the 15th of August, 1840.

*Molere* was, at that time, the owner of a tract of land which he sold on the 26th December, 1842, to *Edmond Slattery*, under whom the defendants hold. The plaintiffs alleging these facts, and the insolvency of *Molere*, seek to enforce their legal mortgage on this land.

The defendants deny the existence of the mortgage, and that *Raphael Molere* ever was the tutor of plaintiffs. They allege that in 1839 *François Molere* was duly appointed their tutor, and gave bond, and that he has never been deprived of the tutorship, or otherwise superseded.

They further allege that while acting as tutor of the plaintiffs, and administering the succession of their father, as such, he became the purchaser of the entire property of said succession; that this sale was a nullity, which the plaintiffs cannot now ratify to the prejudice of third persons; they, finally, allege that the judgment against *Raphael Molere* is fraudulent and collusive. There was judgment against them, subjecting the land to the plaintiffs' mortgage, and they appealed.

The plaintiffs have established, by satisfactory evidence, that *François Molere* had received the sums for which they have obtained judgment against him. It is true that no judgment can, at this time, be found depriving *François Molere* of the tutorship, but his declaration is of record in the Court of Probates, in answer to a petition presented for his removal, that he was insolvent, and had no objection to be removed. The Judge might well have considered this

as a resignation, authorizing him to cause another tutor to be appointed, and as *François Molere* subsequently rendered his account in Court, was discharged as tutor, and the legal mortgage existing on his property raised, it is manifest that if he was not removed, he consented to be superseded, or, in other words, resigned.

It is next contended that *Raphael Molere* was never appointed tutor; it is shown that he acted as such under the supervision, and, at times, under the order of the Court of Probates. The letters of tutorship are found, although the judgment appointing him is not. We cannot doubt that he was tutor, but whether he was or not is immaterial. After *François Molere* had been discharged, he, *Raphael Molere*, received funds belonging to the minors in right of their mother, while he was still the owner of the land in dispute, and whether as tutor, or as intermeddler, a legal mortgage attached upon it in favor of the plaintiffs at least to the amount thus received.

The property, composing the succession of their father, was all purchased by *François Molere*, while he was tutor, and it is shown that he paid over to *Raphael Molere* the price for which he was bound. The plaintiffs sued the latter in affirmance of the sale, and the judgment rendered in their favor was in part for that price.

The sale to *François Molere* was a nullity, and when the minors became of age, their title to the property thus sold was unimpaired. They chose, however, to ratify the sale by suing for the price in 1849, seven years after the land of the defendants had gone out of the possession of *Raphael Molere*, and the only remaining question in the case, is, whether this ratification reverts back to the date of the sale to *François Molere*, or whether it is itself a new title, taking effect from its date only. In the case of *Mercier* v. *Canonge*, the Court held that where a slave, inherited by minors from the succession of their mother, has been illegally sold by their natural tutor, they will not be allowed to ratify the sale, and claim the price from their tutor, to the prejudice of other creditors of the latter. 12th Robinson, 385.

The principle of this decision is applicable to the present case. The nullity resulting from the illegal purchase of the minor's property, is of the same character as that resulting from the illegal sale of it, and should have no greater legal effects.

The French commentators seem to agree that, although nullities of this description may be ratified, their ratification has no retro-active effect; that it derives all its force from the act of ratification, and produces legal effects only from the date of that act. It is viewed by them as a new title, to be executed independently of the first; and rights acquired by third persons, since the void act, but before the ratification, are in no manner affected by it. 7 Toullier, 557, 563. 30 Duranton, pp. 525 et seq.

Under this view of the law which we adopt, the plaintiffs have no legal mortgage on the land of the defendants, for the proceeds of the succession of their father. The judgment must, therefore, be reversed.

It is, therefore, ordered that the judgment in this case be reversed.

It is, further, ordered that the legal mortgage of the plaintiffs be recognized to the amount of $107 31, with legal interest, from the 30th August, 1840, until paid.

It is further ordered that in default of payment of said sum and interest, the land described in the petition be seized and sold to pay them. It is further

ordered that the costs of the District Court be 'paid by the defendants, and those of the appeal by the plaintiffs.

A re-hearing having been applied for and granted, the judgment of the Court was pronounced by

SLIDELL, C. J. I was unable to concur when a judgment was rendered by the former Supreme Court, refusing to recognize a tacit mortgage in favor of the plaintiffs on the land of the defendants, for the proceeds of the succession of their father. A re-hearing was granted, and the subject remaining undetermined by our predecessors, is now to be adjudged by this Court.

My views remain unchanged, and I will briefly state my reasons.

The conclusions of *Mr. Justice Rost*, who was the organ of a majority of the Court, appears to rest upon the following propositions: That the purchase of the slave in 1829 at the probate sale, by *François Molere*, then tutor of the minors, was a nullity, and when the minors came of age, their title to the property was unimpaired. That, although they chose to ratify the sale in 1849, by suing *Raphael Molere*, their second tutor, for the price which he had collected in 1840, this ratification could not retroact to the prejudice of *Slattery*, who bought from *Raphael* in 1842 the land which, under mesne conveyances, the defendants now hold.

Under the circumstances of the case, I am not prepared to treat the purchase of the slave, by *François*, as a nullity at the time when *Raphael* sold his land to *Slattery*. The proper consideration of the subject requires a preliminary statement of the material facts.

The plaintiffs are the children of *Celestin Molere* and *Artemise Breaux*. In the fall of 1829 *Celestin* died. In November, 1829, upon the petition of the mother, who declared her unwillingness to accept the tutorship, *François Molere* was appointed tutor of the two minors, *Ermina* and *Joseph*, and *Raphael Molere* was appointed curator of the third minor, then unborn. In December, 1829, under an order of the Court of Probates, the slave and a plough, the only property in which *Celestin's* succession had any interest, were sold by the Probate Judge, and *François*, the tutor, became the purchaser. The price of the plough was $4, cash; of the slave $1090, payable in three equal instalments in March, 1831, 1832, 1833. This property is described in the probate proceedings " as property belonging to the community which existed between *Celestin Molere* and his wife *Artemise Breaux*." In 1831 *Mrs. Molere* brought suit against *François*, to have him removed from the tutorship, by reason of his alleged unfitness for the office, and neglect of the interest of the minors. In her petition, she remarks upon the invalidity of his purchase, but elects to ratify it, and claims from him her share of the price as widow in community. This particular suit does not appear to have been prosecuted. But it is shown, satisfactorily to my mind, that *François Molere* afterwards consented to be removed; that *Raphael Molere* was appointed tutor in 1840; that *François* rendered an account to the Probate Judge of the nett proceeds of his purchase; that the account was judicially approved, the money received in three years by *Raphael*, and *François* discharged.

At the time of the probate sale, *Mrs. Molere*, the surviving widow, had a half interest in the property sold, subject, it is true, to the debts of the community, which were quite insignificant. I think there is reason to believe she was acquainted with the fact of the purchase by *François*, and at all events she expressly approved it, in 1831, and claimed her share of the price from him. Now

it is clear, *quoad* her interest in the slave and his price, that the plaintiffs must claim through the mother, and stand in her stead. And it seems to me it cannot be said that in 1840, after *Mrs. Molere's* death, when *Raphael*, the new tutor, settled with *François* for the price of the property, the entire sale of that property was a nullity, and he had no right to receive any part of the money.

I am, moreover, not prepared to say that the sale could be treated in 1842 as a nullity, even as to the interest of *Celestin*, which was inherited from him by his minor children. For, it must be observed, that the judgment in 1840, which homologated the account rendered by *François*, and authorized *Raphael* to receive the price of the slave, was, by implication, a judicial approval of the sale, and of the receipt of its proceeds by *Raphael*, two years before *Slattery*, under whom the defendants claim, contracted with *Raphael*. I do not think it was incompetent for the Probate Court to sanction the sale, as it did by the decree in 1840. It may well have been considered by the Probate Judge advantageous for the minors that their new tutor should take the value of the slave in money, rather than bring a suit against *François* to rescind the sale, and get back the slave. Such an action, be it observed, it would have been impossible to maintain, for more than the undivided moiety of the slave, since *Mrs. Molere* had ratified the sale as to her interest, and her heirs could exercise with respect to that interest no greater rights than their mother.

I think the power of the Probate Court to sanction the receipt of the price of the invalid sale, is aided by a consideration of the peculiar phraseology of the Article 1139 of the Code, which the defendants invoke to defeat the plaintiffs. It is true the Article says: "Every curator of vacant successions, or of absent heirs, is prohibited from purchasing by himself, or by means of a third person, any property, movable or immovable, intrusted to his administration;" but it adds: "under pain of nullity (sous peine de nullité,) and responsibility for all damages caused thereby." May not the injured party, or his tutor for him, under judicial sanction, elect to waive the penalty, and say to the illegal purchaser, the property was taken from the estate by your illegal acts; indemnify the estate for its loss. It was well argued by counsel that no more equitable measure of that indemnity could be adopted as against *François*, than the value he himself had set upon it; nor should third persons complain, for his interest as the purchaser to get it as low as possible, is a reasonable assurance that its value was not collusively enhanced.

Let us suppose, however, for the purpose of argument only, what I am not prepared to concede, that a Court having jurisdiction over the property of the minors could not by such a decree, under such circumstances, conclusively affirm the sale. There is another view of the subject, which may solve the present question.

He who becomes a tutor of minors, becomes answerable for the faithful management of their affairs. This responsibility is guarantied by a tacit mortgage of the tutor's property in favor of the minors, dating from his appointment. The language of the Code is broad. The tutor shall administer the minor's estate as a prudent administrator (bon pére de famille) would do, and shall be responsible for all damages resulting from a bad administration. Article 327. The property of the tutor is tacitly mortgaged in favor of the minors from the day of the appointment of the tutor, as security for his administration, and *for the responsibility which results from it.* Art. 354.

As soon as *Raphael* was appointed tutor, it was clearly his duty to do one of two things—either to sue for the rescision of the sale, or to collect the price·

If the former, his duty has been neglected, and the interests of the minors have suffered. There is no injustice, under that theory, and under the evidence in the cause, in assuming that the minors have been damnified to the amount of the slave's value, by the tutor's neglect. If, on the contrary, it was lawful for him, under the sanction of the decree, to adopt the sale and collect the price, the responsibility of *Raphael* to account for it to the minors, attached at the date of its receipt, and that responsibility was secured by the tacit mortgage.

I am, therefore, unable to perceive how the action of the plaintiffs is to fail, under which ever view we regard the second tutor's duty.

However sensibly we may appreciate the hardship of our system of tacit mortgages, its remedy is not a matter within our province. The Code gives a minor that security for the faithful administration of his property, and it is our duty to enforce it. It is not, however, improper to observe that the present case is, in a great degree, divested of the hardships usually incident to that enforcement, by the fact of knowledge of the dangers they were about to incur on the part of the defendants, and those purchasers through whom they derive title.

I think the former judgment of the Supreme Court should be reversed, and the judgment of the District Court affirmed.

All the Judges concurring, it is, therefore, decreed that the judgment heretofore rendered by the Supreme Court in this cause be set aside; and it is further decreed that the judgment of the District Court be affirmed, with costs.

BUCHANAN, J. In the case of *Mercier* v. *Canonge*, 12 Robinson, 385, it was held that when a slave, inherited by minors, had been illegally sold by their tutor, the minors will not be allowed to ratify the sale to the prejudice of other creditors of the tutor.

This doctrine appears to me sound in law, and consonant to equity. Creditors, and I will add purchasers, without notice, ought to be protected against such ratifications.

But the present case differs from that of *Mercier* v. *Canonge* in this: that the defendants are purchasers, with notice of the claim of plaintiffs against *Raphael Molere*, for the price of their slave, illegally sold by *François Mollere*. This notice is patent upon the title of defendants to the land, against which plaintiffs seek to exercise their tacit mortgage.

It is this peculiar feature of this cause, which induces me to concur in the affirmation of the judgment of the District Court.